IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

KIMBERLY ALLCORN                                                      PLAINTIFF

v.                                                          CIVIL ACTION NO. 1:23-CV-121-SA-DAS

PAMELA KAY BEACH;
WESTERN FLYER EXPRESS, LLC
d/b/a WESTERN FLYER XPRESS                                           DEFENDANTS

ORDER AND MEMORANDUM OPINION

On August 8, 2023, Kimberly Allcorn filed her Amended Complaint [2] in the Circuit Court of Prentiss County, Mississippi. She asserts claims of negligence and negligence per se. The Defendants removed the case to this Court, premising federal jurisdiction on the basis of diversity. There are two Motions [70, 76] now before the Court—the Defendants' Motion to Exclude the Plaintiff's Expert [70] and the Defendants' Motion for Summary Judgment [76]. Having considered the parties' filings, along with the relevant authorities, the Court is prepared to rule.

*Relevant Background*

This lawsuit stems from a motor vehicle accident. The two-vehicle collision occurred around 12:12 P.M. on January 4, 2023 in the left northbound lane of U.S. Highway 45, a divided four lane highway.

On the date and time in question, Allcorn was operating a 2019 Kia Forte in the right lane of northbound traffic. She had been in Tupelo, Mississippi to pick up her car from a repair shop, and she intended to return to her residence in Corinth, Mississippi. Pamela Kay Beach was operating a 2023 Kenworth tractor trailer truck that was owned by Western Express. Allcorn was traveling ahead of Beach on the roadway with both heading in the same direction.

After her vehicle began to exhibit additional problems, Allcorn resolved to return to Tupelo. She switched from the right lane to the left lane of northbound traffic in an effort to

proceed into a turn lane so that she could turn around and drive south back to Tupelo. Prior to the collision, Beach was traveling in the left lane at a higher rate of speed than Allcorn. When Allcorn switched into the left lane, Beach applied her brakes but a collision between the vehicles nonetheless occurred with the front of Beach's tractor impacting the back of Allcorn's car.

The collision was captured on dash cam from the dashboard of Beach's tractor trailer. The video has been made part of the record in this case.

The posted speed limit in the area was 65 mph. The dash cam footage indicates that Beach was traveling 71 mph before she applied her brakes.

Allcorn filed suit against Beach and Western Express. She brings claims for negligence and negligence per se. On June 10, 2024, Allcorn designated Soan Chau as an expert in accident reconstruction. Chau has prepared two reports summarizing his conclusions in this case. In their Motion to Exclude [70], the Defendants contend that the Court should exclude Chau from testifying because his opinions fall below the requisite threshold for expert testimony. As noted above, the Defendants additionally seek summary judgment.

*Analysis and Discussion*

Because it impacts the evidence that the Court will consider in analyzing whether the Defendants are entitled to summary judgment, the Court will first address the Defendants' Motion to Exclude [70] and then turn to the Motion for Summary Judgment [76].

I.   *Motion to Exclude [70]*

Prior to addressing the substance of the Defendants' arguments concerning Chau's proposed testimony, the Court finds it appropriate to set forth some background information regarding Chau's work in this case.

Chau's initial report is dated June 7, 2024. In that report, Chau opined that based on his calculations involving time, speed, and distance, if Beach had been traveling 65 mph when Allcorn initiated her lane change from the right lane to the left lane, she could have avoided the collision.

Thereafter, on July 8, 2024, the Defendants' accident reconstructionist expert, Benjamin Smith, prepared his written report. In that report, Smith identified errors in Chau's calculations—namely, Smith opined that the calculations contained in Chau's report equated to Beach's speed being 76 mph, which is demonstrably false based on the dash cam footage indicating that she was traveling 71 mph. Smith ultimately concluded that based on his own calculations, even if Beach had been traveling at the posted speed limit of 65 mph, she could not have avoided the collision.

After Smith pointed out the errors in Chau's calculations, Chau prepared a supplemental report. In that report, Chau corrected the mathematical errors that Smith identified. After doing so, Chau again concluded that if Beach had been traveling at 65 mph instead of 71 mph, she could have avoided the collision.[1]

In the supplemental report, Chau reached the following conclusions:

    1.    Based on the materials that are available at the time of this report, it is my conclusion that, had the tractor trailer was traveling [sic] at the speed limit of 65 mph:

        a.    There would have been approximately 84 feet between the tractor trailer and the Kia, when the lead vehicle (Kia) arrive [sic] at the same collision point

        b.    At an 84 feet distance between the vehicles, the tractor-trailer driver would have more time to slow down, make lane change, release accelerator, or brake

---

[1] In a previous Motion [68], the Defendants asked the Court to strike Chau's supplemental report on the basis that it does not constitute a proper supplementation. The Court rejected that argument and declined to strike the report. *See* [103].

3

y

      c.      Ms. Kimberly Allcorn would also have entered the left turn lane by the time the tractor trailer arrive [sic] at point of collision

    2.      Because the tractor trailer was over the speed limit the entire 10 seconds (1.1 second braking) leading up to the collision, the Kia was not able to clear the left travel lane

[70], Ex. 2 at p. 7.

Against this backdrop, the Court turns to the Defendants' arguments to exclude Chau's proposed testimony.

    *A.*    *Standard*

The admission or exclusion of expert witness testimony is left to the discretion of the district court. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999); *United States v. Wen Chye Liu*, 716 F.3d 159, 167 (5th Cir. 2013). Rule 702 of the Federal Rules of Evidence governs expert witness testimony and provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

FED. R. EVID. 702.

"Prior to admitting expert testimony, district courts must be assured that the proffered witness is qualified to testify by virtue of his knowledge, skill, experience, training, or education.

Accordingly, to qualify as an expert, the witness must have such knowledge or experience in his field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth." *EEOC v. Modern Grp., Ltd.*, 725 F. Supp. 3d 644, 660 (E.D. Tex. 2024) (quoting *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 881 (5th Cir. 2013); *United States v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004)) (additional citations and quotation marks omitted).

The proponent of the testimony bears the burden to establish its admissibility by a preponderance of the evidence. *Id.* (citations omitted). "The proponent need not prove to the judge that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable." *Sandifer v. Hoyt Archery, Inc.*, 907 F.3d 802, 809 (5th Cir. 2018).

*B.    Application*

The Defendants emphasize three distinct arguments that they contend constitute bases for exclusion of Chau's testimony: (1) that his opinions are not relevant and do not assist the trier of fact; (2) that his opinions "have no methodology or principles"; and (3) that his prior opinions in another case contradict his opinions here.

First, the Court turns to relevance. Expert testimony must "aid the factfinder in evaluating the evidence." *Haimur v. Allstate Prop. and Cas. Ins. Co.*, 605 F. Supp. 3d 887, 889 (S.D. Miss. 2022). On this point, the Defendants specifically argue that "Chau's opinion is that Beach would not have been at the accident scene at the same time as Plaintiff if Beach had not been traveling 70 to 71 miles per hour. Because such an opinion is not valid under Mississippi law, the opinion is irrelevant and must be excluded." [71] at p. 7. The Defendants contend that multiple Mississippi federal and state court cases support their contention that Beach's speed is irrelevant.

For instance, the Defendants spend time discussing the District Court for the Southern District of Mississippi's decision in *Raglin v. MSJ Trucking, Inc.*, 2013 WL 6631546 (S.D. Miss.

5

Dec. 17, 2013). There, the defendant, George Bryant, "was driving a commercial truck and rear-ended Plaintiff Donald Raglin's vehicle which had stopped to make a right turn." *Id*. at *1. Bryant was driving the truck in the course and scope of his employment with MSJ Trucking. *Id*. Raglin designated an expert, Dane Maxwell, who intended to testify that Bryant "committed various violations of the Federal Motor Carrier Safety Regulations. [Maxwell's] opinion is that these violations caused the traffic accident because based on the violations, MSJ should have placed Bryant 'out of service' and he should not have been driving at the time of the accident." *Id*. at *2. Maxwell also proposed to testify that Bryant "manipulated logbooks to hide excessive speed, and had he driven slower on earlier legs of the trip he would not have been at the scene of the accident when Raglin arrived." *Id*.

The district court did not permit Maxwell to testify on these topics, holding that "[i]mposing liability for FMCSR violations under the theory that the truck or driver would not have been on the road at all removes legal cause from the equation and imposes strict liability." *Id*. As to the speed issue, the district court concluded "[t]his argument is a non-starter and will not be discussed. Driving too fast or too slow *earlier* in a trip such that it changes your location is not a proximate cause." *Id*. n. 1 (emphasis in original).

Despite the Defendants' reliance on it, *Raglin* does not support exclusion of Chau's testimony here. In large part, the Court finds that the Defendants mischaracterize Chau's conclusions. He does not provide any opinion as to Beach's speed *earlier* in the trip. Rather, he reaches conclusions as to whether Beach traveling the speed limit at the time of the collision and the seconds leading up to the collision would have enabled her to avoid the collision. This is easily distinguishable from the plaintiff's argument in *Raglin*. Candidly, it is quite difficult for this Court to see how the driver's speed at the time of the collision, along with a concomitant conclusion that

6

a slower speed would have enabled the defendant to avoid the accident, would not be of significant relevance in a case of this nature. Allcorn is not attempting to rely on evidence far attenuated from the accident, as the plaintiff did in *Raglin*.

Whether Chau's opinions are the product or reliable methodology is a different inquiry, which the Court will address hereinafter, but the argument that speed is altogether irrelevant misses the mark. The Defendants' argument is rejected.

Next, the Defendants contend that Chau does not apply reliable methodology or principles. In fact, they argue that "Chau's opinions have *no* methodology or principles." [71] at p. 10 (emphasis added).

Although the Court has already briefly addressed some discrepancies in Chau's work, further context is necessary in order to fully grapple with the Defendants' contentions. In his initial report, Chau provided the following information in a section described as "Video Analysis":

- a. currently only 10 seconds of footage before [the collision] was available []

- b. 8 seconds after collision

- c. Impact occurred at +1.00

- d. The 18 second Video footage does not have evenly spaced time

- e. At T= -1.80 seconds, Kia encroached into the left travel lane; tractor trailer was traveling at 71 mph

- f. At IMPACT T= +1.00, Kia was approximately from auxiliary lane for median break; tractor trailer V=57 mph

- g. The total distance traveled by the tractor trailer during 11 seconds (of video footage) prior to collision is approximately 1237 feet

- h. Travel distance at 65 mph for 11 seconds is 1049 feet

[70], Ex. 1 at p. 1-2.

Based on that information, Chau concluded that, if the tractor trailer had been traveling at the speed of 65 mph, "[t]here would have been approximately 188 feet between the tractor trailer and the Kia, when the lead vehicle (Kia) arrive [sic] at the same collision point[.]" *Id*. at p. 2. He additionally concludes that Allcorn "would also have entered the left turn lane by the time the tractor trailer arrive[d] at point of collision[.]" *Id*.

As noted above, the Defendants' expert, Benjamin Smith, prepared a report that identified errors in Chau's calculations.

Chau then prepared a supplemental report. In that report, the "Video Analysis" section contains much of the same information listed above but sub-sections (d), (f), and (g) are slightly different and provide as follows:

> d. The 18-second video footage appears to be at approximately 10 Hertz
>
> . . .
>
> f. At IMPACT T= +1.00, Kia was approximately 50 feet from beginning of auxiliary lane for median break; tractor trailer V=57 mph
>
> g. The total distance traveled by the tractor trailer during 11 seconds (of video footage) prior to collision is approximately 1133 feet

[70], Ex. 2 at p. 3.

The supplemental report then goes on to provide the following additional information:

> 11. Had the tractor trailer was traveling [sic] 65 mph for 11 seconds, there would be approximately 84 feet between the tractor trailer and the Kia Forte when Ms. Allcorn arrives that [sic] the same collision point (POC)
>
> 12. As seen in the video, this tractor trailer can decelerate from 70-57=13 mph in 1.1 second [sic], traveling a distance of approximately 102 feet

8

    13.    At 65mph [sic], the same decelerate [sic] from 65-52=13 mph in 1.1 second [sic], tractor trailer would travel a shorter distance of 94 feet

. . .

    16.    At collision, the Kia Forte's front bumper appears to be within 20 to 30 feet of the beginning of the auxiliary lane

    17.    There was approximately 40 to 50 percent overlap between the tractor trailer and the Forte at impact

. . .

    19.    For every incremental seconds [sic] Ms. Beach was traveling at 65 mph beyond the 10 seconds (before braking), the incremental increase in distance would be (71-65)1.47=8.8 feet.

*Id*. at p. 4-6.

He ultimately reaches the same conclusion—that Allcorn would have been able to reach the left turn lane before the collision if Beach had been traveling at 65 mph prior to the collision.

The Defendants poke numerous holes in Chau's conclusions. For instance, they note that he provides no explanation for the change in his calculations from the initial report to the supplemental report. They also emphasize that in the initial report Chau did not include a specific distance that Allcorn's vehicle was from the turn lane at the time of the collision but that in page 3 of his supplemental report he indicates a distance of 50 feet and then later references a distance of 20-30 feet. The Defendants ultimately contend that Chau is "simply putting numbers in his report to make it seem scientific." [71] at p. 12.

The Court is cognizant of the Defendants' concerns. However, they go to the *weight* of Chau's testimony, not its admissibility. In his report, Chau includes the formula that he used to reach his ultimate conclusion that Allcorn would have been able to reach the left turn lane ahead

9

of Beach (and avoid the collision) if Beach had been traveling at a speed of 65 mph. The Defendants may disagree with those calculations, believe that they contain errors, and/or that they do not take into account all relevant information—they will certainly be given an opportunity to cross-examine Chau on those topics at trial. *See*, *e.g.*, *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993) ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). But to altogether exclude Chau at this stage of the proceedings would go too far, in this Court's view. The Defendants have not shown that Chau failed to engage in reliable methodology in reaching his conclusions—just that they disagree with those conclusions. That distinction is important.

Lastly, the Defendants point to testimony that Chau provided in a previous case and contend that his testimony here is contradictory to his conclusion in that case. This Court is concerned, however, with the methodology that Chau has employed in *this* case and whether his methodology is sufficiently relevant and reliable to be admitted into evidence. The Defendants will be provided latitude to cross-examine Chau about his prior testimony but this, again, is an insufficient basis to completely exclude his testimony. *See*, *e.g.*, *Texas Gas Transmission, LLC v. 18.08 Acres +/- in Southeast Quarter of Section 24*, 2012 WL 12926064, at *1 (N.D. Miss. Apr. 5, 2012) ("The court will not allow a *Daubert* inquiry to supplant a trial on the merits[.]").

The Motion [70] is DENIED.

II.     *Motion for Summary Judgment [76]*

In their Motion for Summary Judgment [76], the Defendants seek dismissal on the basis that Beach engaged in no actionable negligence but instead that the collision was unavoidable once Allcorn switched into the left lane.

*A. Standard*

Summary judgment is warranted when the evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Nabors v. Malone*, 2019 WL 2617240, at *1 (N.D. Miss. June 26, 2019) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

"The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.'" *Id*. (quoting *Celotex*, 477 U.S. at 323, 106 S. Ct. 2548). "The nonmoving party must then 'go beyond the pleadings' and 'designate specific facts showing that there is a genuine issue for trial.'" *Id*. (quoting *Celotex*, 477 U.S. at 324, 106 S. Ct. 2548). Importantly, "the inferences to be drawn from the underlying facts contained in the affidavits, depositions, and exhibits of record must be viewed in the light most favorable to the party opposing the motion." *Waste Mgmt. of La., LLC v. River Birch, Inc.*, 920 F.3d 958, 964 (5th Cir. 2019) (quoting *Reingold v. Swiftships, Inc.*, 126 F.3d 645, 646 (5th Cir. 1997)). However, "[c]onclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial." *Nabors*, 2019 WL 2617240 at *1 (citing *TIG Ins. Co. v. Sedgewick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002)) (additional citations omitted).

B.   *Application*

In their Memorandum [77], the Defendants emphasize three particular points that they contend support judgment in their favor—(1) that Allcorn engaged in an improper lane change in violation of Mississippi Code Section 63-3-603; (2) that Beach's traveling in excess of the posted speed limit is insufficient to establish fault; and (3) that the circumstances created a "sudden emergency" such that Beach cannot be held liable.

The Court will first address the Defendants' argument as to speed, in support of which they assert:

> [Plaintiff] contends that Beach was traveling at 57 mph when the impact occurred. She further contends that Beach would not have been there for Plaintiff to cut off if Beach had been driving 65 miles per hour for 10 seconds. Mississippi has recognized that simply exceeding a speed limit is insufficient to establish fault. *See, e.g.*, *Lias v. Flowers*, 995 So. 2d 337 (Miss Ct. App. 2006)[;] *McFarland v. Leake*, 864 So. 2d 959 (Miss. Ct. App. 2003); *Capital Tobacco & Specialty Company v. Runnels*, 221 So. 2d 703 (Miss. 1969); *Gihuer v. Newcomb*, 2008 WL 4491389 (S.D. Miss. 2008).

[77] at p. 11-12.

The Court addressed this issue above in connection with the Defendants' request to exclude Chau's testimony. Having reviewed the cases upon which the Defendants rely, the Court finds that each of them is distinguishable. For instance, *Lias* concerned a collision wherein a man driving a lawnmower on the highway made an unexpected and sudden U-turn into the side of the defendant's car. *Lias v. Flowers*, 955 So. 2d 337, 342 (Miss. Ct. App. 2006). The fact that the defendant was traveling 10 miles per hour over the speed limit was insufficient to establish liability because there was not evidence that the defendant's speed "contributed to Mr. Lias's sudden U-turn into the side of her car." *Id*. at 343.

12

In *Lias*, though, the Mississippi Court of Appeals explained that "it is not enough to simply show that a party committed some misdemeanor traffic offense. Rather, a party must demonstrate that the speeding 'must still be shown to have been the cause of the accident.'" *Id*. (quoting *McFarland v. Leake*, 864 So. 2d 959, 961 (Miss. Ct. App. 2003)).

In the case at bar, Allcorn, through the testimony of Chau, has come forward with evidence that would do precisely as the Court of Appeals instructed in *Lias*—that is, she points to Chau's testimony to demonstrate that Beach's speed contributed to the accident. The plaintiff in *Lias* failed to do so. As such, that case is factually dissimilar and does not support the premise for which the Defendants now attempt to use it.[2]

Next, the Court turns to the Defendants' contention that Allcorn engaged in an improper lane change in violation of her statutory duty under Mississippi Code Section 63-3-603. Under that statute, a driver cannot change lanes "until the driver has first ascertained that such movement can be made with safety." MISS. CODE ANN. § 63-3-603(1)(a).

The Defendants contend that "[p]er the undisputed dash cam footage, Plaintiff violated this statute by changing lanes without first ascertaining that it was safe to do so." [77] at p. 10. In her deposition, Allcorn specifically testified that she looked in her rearview mirror and side mirror and that it "looked clear." [76], Ex. 5 at p. 10. Thus, her testimony was that she did first ascertain that it was safe to engage in a lane change.

Normally, in deciding a motion for summary judgment, "[a]ll facts must be viewed in the light most favorable to the nonmovant and all justifiable inferences must be drawn in his favor." *Crane v. City of Arlington, Tex.*, 50 F.4th 453, 461 (5th Cir. 2022) (citing *Darden v. City of Fort*

---

[2] The Court sees no need to walk through each of the cases upon which the Defendants rely. This general principle is applicable and distinguishes this case from others where the plaintiffs failed to provide a causal link between speed and the accident.

13

*Worth*, 880 F.3d 722, 727 (5th Cir. 2018)). "However, if there is video evidence that 'blatantly contradict[s]' the plaintiffs' allegations, the court should not adopt the plaintiffs' versions of facts; instead, the court should view those facts 'in the light depicted by the videotape.'" *Craig v. Martin*, 49 F.4th 404, 409 (5th Cir. 2022) (quoting *Scott v. Harris*, 550 U.S. 372, 380-81, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007)).

Here, while the video footage does confirm that Allcorn changed lanes in front of Beach, it does not reveal whether Allcorn checked her rearview and/or side mirror before initiating the lane change. The fact that the collision occurred does not necessarily undercut—or blatantly contradict—Allcorn's testimony. Taking as true Allcorn's testimony, along with Chau's conclusion that there was sufficient time for her to clear the left lane of traffic if Beach had been traveling the speed limit, a question of fact as to liability remains.

Lastly, the Defendants contend that Beach was faced with a "sudden emergency" and that she "only had 2.6 seconds on a 65 mile per hour highway to avoid Plaintiff's sedan that encroached [her] lane while the Plaintiff was going 34 miles per hour and braking." [77] at p. 21. The Defendants' argument is misplaced. None of the cited cases applying the "sudden emergency" doctrine in any way resembled the facts of this case. Furthermore, their premise underlying this argument is wrong—they contend that "[t]he accident reconstruction opinion confirms" the accident was unavoidable. *Id*. However, it is only the Defendants' accident reconstructionist who maintains this conclusion—Allcorn's expert reached a different conclusion.

The Defendants' argument is a non-starter.

Despite the Defendants' efforts to paint it differently, this case stems from a motor vehicle collision around which questions of fact remain. It would go beyond this Court's authority to decide the case at summary judgment. *See*, *e.g.*, *Grogan v. Kumar*, 873 F.3d 273, 279 (5th Cir.

14

2017) ("It is not the court's role on summary judgment to weigh competing evidence or make credibility determinations.").

The Motion [76] is DENIED.

*Conclusion*

For the reasons set forth above, the Defendants' Motions [70, 76] are DENIED. The case will proceed to trial.

SO ORDERED, this the 23rd day of January, 2025.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE